IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHU VAN NGUYEN, | : | NO. 2:06-cv-2827-EL |
|         Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| SUPERINTENDENT GRACE OF | : | |
| SCI- HUNTINGDON, | : | |
|         AND | : | |
| THE DISTRICT ATTORNEY OF | : | |
| THE COUNTY OF LANCASTER, | : | |
|         AND | : | |
| THE ATTORNEY GENERAL OF | : | |
| THE STATE OF PENNSYLVANIA, | : | |
|         Respondents | : | |

<u>REPORT AND RECOMMENDATION</u>

CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE

      This is a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by a prisoner currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania. For the following reasons, it is recommended that the Petition be denied.

I.     PROCEDURAL HISTORY

      Petitioner, Phu Van Nguyen, was charged with one count of criminal homicide and one count of aggravated assault on March 27, 1998, following a shooting at Café May-Hong in Lancaster County, Pennsylvania on March 14, 1998. He was arrested on September 11, 1999, and the preliminary hearing occurred on January 26, 1999. At that time, the District Judge returned a charge of criminal homicide, but dismissed the aggravated assault charge.

      Attorneys David Blanck, Esq. And Barrie Wellner, Esq. originally represented petitioner, but in October of 1999, petitioner sought to have them withdraw as counsel. At that time, petitioner also filed

several other petitions seeking, *inter alia*, a continuance of the trial and permission to proceed *pro se*. Nevertheless, on November 16, 1999, the court appointed Robert Beyer, Esq. as new counsel. However, on February 4, 2000, his appointment was rescinded due to a conflict of interest and Gerald A. Lord, Esquire was appointed to represent petitioner at trial and on appeal.

On December 23, 1999, prior to Mr. Lord's appointment, petitioner filed a *pro se* petition for writ of habeas corpus in this Court, alleging (1) mistaken identification; (2) prosecutorial misconduct during the preliminary hearing by assistant district attorney and prosecuting detective; (3)prejudicial line-up; and (4) violation of constitutional right to a speedy trial and Pa. R. Crim. P. 1100. Since petitioner had yet to stand trial in state court, this Court declined to prematurely hear these claims and following a Report and Recommendation by the undersigned, the petition was dismissed without prejudice.

Petitioner was convicted of first degree murder after a five day jury trial, which was presided over by the Honorable Paul K. Allison of the Court of Common Pleas of Lancaster County. Judge Allison sentenced him to a mandated sentence of life in prison without the possibility of parole.

On June 14, 2000, petitioner filed a timely notice of appeal to the Superior Court of Pennsylvania. He filed a Supplemental Concise Statement of Matters Complained of on Appeal on December 14, 2000, raising ten allegations of trial court error, including allegations that the trial court erred by admitting pre-trial and in-court identifications by Bao Ho, Tan Ahn Nguyen, Hoaug Le, and Minh Phuong Sun. The trial court issued an opinion addressing all ten claims on January 16, 2001.

On appeal to the Superior Court, petitioner presented eight of the ten claims raised in his 1925(b) statement, as well as five additional claims. Included in his claims on appeal was a claim that the trial court had erroneously denied his request to act as co-counsel to present the best defense. On February 5, 2002, the Superior Court issued a memorandum opinion affirming his conviction and sentence Commonwealth v. Nguyen, 797 A.2d 1026 (Pa. Super. Ct. 2002). With respect to petitioner's claim

alleging trial court error for refusing to allow him to act as co-counsel, the Superior Court held that the claim was waived as a result of petitioner's failure to include it within his 1925(b) statement. Petitioner did not seek allowance of appeal to the Pennsylvania Supreme Court.

Petitioner filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S.A. §§ 9541 et seq., on February 3, 2003, arguing only that his counsel had been ineffective for failing to raise at trial, or on direct appeal, the court's denial of his right to proceed *pro se*. Petitioner's appointed counsel, Russell Pugh, Esquire, filed a letter pursuant to Commonwealth v. Finley, 379 Pa. Super. 390, 550 A.2d 213 (1998), stating that petitioner's claims lacked arguable merit. On August 22, 2003, the PCRA court issued an opinion dismissing the petition without a hearing.

Petitioner filed a *pro se* Notice of Appeal to the Superior Court of Pennsylvania. In his Statement of Matters Complained of on Appeal, he raised 16 allegations of trial court error, including claims that the trial court erred in denying his request to proceed *pro se*, that counsel was ineffective for failing to preserve the *pro se* issue for direct appeal, and that counsel was ineffective for failing to object to the admission of identification testimony. On appeal, however, he raised only two claims: (1) whether the trial court erred in accepting the Finley letter, where petitioner was denied his right to self representation, and (2) whether his appointed attorney, Mr. Pugh, was ineffective for not raising his *pro se* claim. The Pennsylvania Superior Court issued a memorandum opinion on June 29, 2004, reversing the dismissal of petitioner's PCRA petition and remanding the case.

Attorney Pugh was once again appointed to represent petitioner, but due to a conflict of interest, the appointment was rescinded and Vincent J. Quinn was appointed. With Mr. Quinn as standby counsel, an evidentiary hearing was held on November 29, 2004 before the Honorable Michael J. Pezerous of the Lancaster County Court of Common Pleas. The issue on remand, in accordance with the remand order, was the circumstances of Mr. Lord's appointment. After receiving briefs from both sides, on February

8, 2005, Judge Pezerous issued an opinion finding that petition was not denied his right to self representation, and once again dismissing the PCRA petition.

Petitioner filed a timely Notice of Appeal to the Superior Court of Pennsylvania, alleging that he was entitled to a new trial as a result of the trial court's error that deprived him of his Sixth Amendment right to represent himself.  In affirming the PCRA Court's dismissal, the Superior Court declined to address the merits of petitioner's claim.  The Court found that petitioner had waived his claim by failing to raise it on direct appeal, and that he had failed to properly layer the claim for PCRA review.  Petitioner did not file an appeal to the Pennsylvania Supreme Court.

On May 30, 2006, petitioner filed the instant petition for writ of habeas corpus, in the United States District Court for the Middle District of Pennsylvania.  The petition was transferred to this Court pursuant to 28 U.S.C. § 2241(d).  Petitioner now alleges the following grounds for relief: (1) petitioner is entitled to a new trial as a result of the trial court's error that deprived him of his Sixth Amendment right to represent himself; (2) the state courts erroneously permitted the Commonwealth to introduce identifications made by Ming Phuong Son, Hoaug Le, and Bao Ho; the evidence brought in through these three witnesses as well as the evidence commenting on their identifications, clearly prejudiced his right to a fair trial, violating due process.

II.     STANDARD OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless that adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court interpreted this statute and more clearly defined the two-part standard of review in Williams v. Taylor, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000). Under the first prong of the review, a state court decision is "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States," (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." Id. at 405. Pursuant to the second prong, a state court decision can involve an unreasonable application of Supreme Court precedent: (1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context should apply." Id. at 407-408.

III.    PROCEDURAL DEFAULT

Respondent argues that both of petitioner's claims suffer from a type of procedural default. First, they argue that petitioner's claim regarding his right to proceed *pro se* is procedurally defaulted as a result of the Superior Court's finding that the claim was waived. Second, respondents argue that his claim regarding the identifications made by three witnesses was not fairly presented to the state courts and thus has not been exhausted. Given that petitioner's time for returning to the Pennsylvania State Court has lapsed, they argue that this claim is defaulted.

The procedural default barrier, in the context of habeas corpus, precludes federal courts from

reviewing a state petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553, reh'g denied, 501 U.S. 1277, 112 S. Ct. 27 (1991). "In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. . . [b]ecause this Court has no power to review a state law determination that is sufficient to support the judgment." Id. Although the issue of procedural default is best addressed by the state courts in the first instance, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it defaulted. Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).

    1.    Default by Waiver:

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), "[t]he lower court . . . may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on the appeal no later than 14 days after entry of such order. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." In Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998), the Pennsylvania Supreme Court held that any issues not timely raised in a court-ordered Rule 1925(b) statement would be considered waived on appeal. Id.; see also Konya v. Meyers, Civ. A. No. 03-4065, 2004 WL 1171730, *3 (E.D. Pa. May 24, 2004) (collecting Pennsylvania cases consistently applying that rule).

Petitioner's first claim suffers from this precise type of procedural default. The Pennsylvania Superior Court, on direct appeal, explicitly deemed petitioner's claim regarding his right to proceed *pro se* waived because, although petitioner attempted to raise the issue, he failed to include it in his concise statement of the matters complained of with the trial court pursuant to Pa.R.A.P. 1925(b). When he subsequently raised the claim in his PCRA petition, the Superior Court once again found that he had

waived the issue and that it could not be addressed. The Court reasoned that the issue was waived because he had failed to raise it on direct appeal and he failed to properly layer the claim. See 42 Pa.C.S.A. §§ 9543(a)(3-4); 9544(b). Accordingly, this Court must find the claim procedurally defaulted.

This finding, however, does not automatically foreclose all further federal review. To survive procedural default in the federal courts, the petitioner must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. While petitioner makes no allegation under the latter exception, he does suggest that the failures of his counsel constitute cause and prejudice. It remains well-established that a claim of appellate counsel ineffectiveness can constitute cause sufficient to excuse procedural default so long as that claim in itself is not defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-454, 120 S. Ct. 1587, 1591-1592 (2000); Werts v. Vaughn, 228 F.3d at 193.

In the present case, petitioner alleges *PCRA* counsel ineffectiveness for failure to raise the underlying claim, but does not argue ineffective assistance of *appellate* counsel for failing to include the issue in his 1925(b) statement as cause to excuse procedural default.[1] Furthermore, to the extent plaintiff would now present this claim, petitioner failed to present the issue of appellate counsel's effectiveness to the state courts and his time for doing so has now expired. Accordingly, this claim is, in itself, procedurally defaulted, making it ineligible to provide cause to excuse the procedural default of the underlying claim.

2.      Default by Failure to Exhaust:

Another form of procedural default may occur "[i]f [a] petitioner failed to exhaust state remedies

---

[1] As there is no constitutional right to PCRA counsel, this allegation cannot constitute cause to excuse procedural default. Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002).

7

and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . ." Coleman, 501 U.S. at 735 n.1; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). Pursuant to the exhaustion requirement, before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). In other words, a petitioner must invoke "one complete round of the State's established review process" before he may assert the claim on federal habeas review. Id. at 845. A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, which demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts. Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). Generally, federal courts should dismiss unexhausted claims without prejudice, so as not to deprive the state courts of the "opportunity to correct their own errors, if any." Toulson v. Beyer, 987 F.2d 984, 989 (3d Cir. 1993).

Respondents contend that petitioner's claims regarding identifications by three witnesses were never fairly presented to the state courts, and are thereby defaulted. However, we must disagree. Specifically, respondents note that the Superior Court, when summarizing petitioner's many claims, did not specifically reference due process while listing his claim regarding the identifications. (Opinion at p. 4). However, upon review of the Superior Court's discussion as to the merits of petitioner's claim, this Court finds that the Superior Court clearly addressed the claim as one of due process. At the outset of its discussion of petitioner's claim regarding the identifications, the Court noted that it must determine "whether the identification procedure was so suggestive and conducive to irreparable mistaken identity so as to deny the accused due process." (Opinion at p. 708). Therefore, although the Court cited Pennsylvania law governing due process claims of this nature, it was clearly alerted to the nature of the claim presented by petitioner and it was the "substantial equivalent" to that now presented. Accordingly,

we cannot find petitioner's claim regarding the identifications to be defaulted, and must proceed to address the merits.

IV.    DISCUSSION OF MERITS

Petitioner argues in his second claim that the state court's admission of the identifications made by Minh Phuong Son, Hoaug Le, and Bao Ho resulted in a violation of his due process. The Due Process Clause prohibits the use of identification procedures which are "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967). In Simmons v. United States, 390 U.S. 377 (1968), the United States Supreme Court recognized that the "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Id. at 383. If police single out particular photographs or indicate that they have evidence implicating one of the individuals in the photographs, the chance of misidentification is heightened, thereafter reducing the trustworthiness of a subsequent lineup or in-court identification. Id. at 383-384. In other words, the court theorized that a witness, upon being subjected to a suggestive photo array, may retain the image of the suggested perpetrator in his or her mind, making any later identifications potentially inaccurate. Id. Despite its acknowledgment of the hazards inherent in an initial identification by photograph, however, the court declined to blanketly prohibit its employment as unconstitutional. Id. at 384. Rather, it held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 384.

"[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977). If, following a suppression hearing, a trial court finds that out-of-court identifications were impermissibly suggestive, it may also exclude the

in-court identification, unless an independent basis for that in-court identification exists. DiAngelo v. U.S., 406 F. Supp. 880, 882 (D.C. Pa. 1976). In United States v. Higgins, 458 F.2d 461 (3d Cir. 1972), the Third Circuit Court of Appeals set out seven factors to be considered in determining whether an in-court identification is the product of an independent source:

(1) the manner in which the pre-trial identification was conducted;

(2) the witness' prior opportunity to observe the alleged criminal act;

(3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification;

(4) any previous identification by the witness of some other person;

(5) any previous identification of the defendant himself;

(6) failure to identify the defendant on a prior occasion; and

(7) the lapse of time between the alleged act and the out-of-court identification.

Id. at 465. Although each individual factor is important, the "totality of surrounding circumstances" governs the ultimate determination. Id. Furthermore, while the standard has been used to determine whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, it has also been held to apply as a standard for the admissibility of testimony concerning the out-of-court identification itself. Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 381 - 382 (1972).

    A.    Bao Ho

Petitioner first argues that the identification made by Bao Ho on March 15, 1998 is problematic because he admitted he was scared, provided false information to the police and because Mr. Ho was later unable to identify petitioner when shown a photo array on August 26, 1999 or when he attended a line up on December 2, 1998.

On direct appeal the Superior Court specifically dealt with this argument, noting that petitioner does

not even assert that the pre-trial identification was tainted by any suggestiveness. Rather, petitioner argues that Mr. Ho displayed apprehension before identifying him. The Superior Court concluded that such "alleged apprehension does not provide a sufficient basis to challenge the admission of the initial photographic identification." (Opinion at p. 8). The Court reviewed the suppression record and noted that the witness was shown an album containing numerous photographs of Asian males, three of which were petitioner. Without any prompting from the police, Mr. Ho identified petitioner as the shooter each time he came across petitioner's photo. The Court therefore properly found that there was nothing suggestive about the identification, which would make it inadmissible.

      The Superior Court also rejected petitioner's argument that his trial was tainted as a result of Mr. Ho's failure to later identify petitioner on August 29, 1999 and his failure to identify anyone in a physical lineup on December 2, 1998. According to the Superior Court, on August 29, 1999, Mr. Ho picked petitioner's picture as well as another person's photo and indicated that they both resembled the shooter. Noting that Mr. Ho's identification occurred on March 15, 1998, only hours after the shooting, the Court considered the fact that Mr. Ho testified at the suppression hearing that while standing in the well lit café' he was able to get a clear view of the shooter. He testified that he was able to see the shooter's face, build and clothing, had the opportunity to view the shooting of his cousin and was even hit in the head with the shooter's gun while trying to break up the confrontation. Given his testimony, the Superior Court found that there was little chance for misidentification at the photographic line up which was conducted shortly after the shooting. The Court concluded that the fact the witness refrained from making subsequent identifications after petitioner's appearance had changed had no bearing on the admissibility of the initial identification.

      First, we agree that any uncertainty or hesitation prior to making an identification goes to the weight of the testimony but not to its admissibility. See U.S. v. Carter, 756 F.2d 310, 313 (3d Cir. 1985); United

11

States v. Flenory, 619 F.2d 301 (3d Cir.1980). Furthermore, we agree with the State Court's finding that "at most the witness' subsequent reluctance or inability to again identify [petitioner] goes to the weight to be accorded his identification testimony." (Opinion at p. 11). Having reviewed petitioner's claim and the state court record, we agree with the Superior Court's finding that petitioner failed to present anything to indicate that Mr. Ho's identification was unduly suggestive. As there was nothing unduly suggestive, any shortcomings with the identification "go more to the weight of the evidence than the reliability of the identification." United States v. Brownlee, 454 F.3d 131, 140 (3d Cir. 2006). Accordingly, we cannot find that the decision reached by the state court was contrary to clearly established federal law and habeas relief is denied.

    B.    Hoaug Le

In his second argument, petitioner contends that because Mr. Le failed to identify petitioner during photographic lineups on March 15, 1998 and May 11, 1998, his later identifications of petitioner at a physical lineup on December 2, 1998, and his identification of petitioner in court were tainted. The Superior Court once again disagreed. The court considered Mr. Le's testimony at the suppression hearing that on the night of the shooting he was playing pool in the well lit café about ten feet from the victim and petitioner's group, that he had no difficulties with his vision on the night of the incident, and that from his vantage point he could see the shooter, as well as the fact that immediately following the shooting Mr. Le told the police what and who he had observed and gave specific descriptions of the individuals involved. The Court found that his testimony was indicative of an ability to distinguish between the shooter and the others involved because he gave equally detailed descriptions of petitioner and the others involved. Furthermore, he never misidentified petitioner, and although he did not identify him in photographs, he was able to identify petitioner in person both at the lineup and in court. The Court found that given the totality of the circumstances, the identification was reliable and properly admitted.

After considering whether under the totality of the circumstances, there exists an independent basis for Mr. Le's identification, the Superior Court appropriately found that even assuming the out of court identification was suggestive, the facts established at the suppression hearing indicate that his in court identifications were not the result of any earlier suggestiveness. We agree that given the witness' testimony regarding his opportunity to see petitioner at the time of the shooting and his ability to describe petitioner and the others involved after the shooting, there exists an independent basis for the identifications made by Mr. Le. Petitioner has not shown, that the decision of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Habeas relief is therefore denied.

    C.    <u>Minh Phuong Son</u>

Finally with respect to the identification made by Minh Phuong Son, petitioner's counsel made an oral motion to suppress her identification in a photo array conducted on January 26, 1999 because of her failure to appear at a court ordered physical line up on December 2, 1998. As the Superior Court noted, the suppression court denied the motion because Ms. Son was not ordered to be present at the lineup. The Court also held that because the photo array was conducted in the presence of counsel and was not challenged in any other way at the suppression hearing, it was properly admitted at trial. (Superior Court Opinion at p. 14). Accordingly, to the extent petitioner now challenges this identification as being suggestive on any other grounds, the Superior Court clearly found those claims waived due to counsel's failure to challenge the identification at the suppression hearing. We therefore find this claim to be

procedurally defaulted.[2] As petitioner cannot demonstrate cause and prejudice to excuse the default, this claim must also be dismissed.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, to wit, this *22nd* day of January, 2007, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED. There is no probable cause to issue a certificate of appealability.

      /s/ Charles B. Smith
CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[2] While we recognize that a claim of ineffective assistance of counsel for failure to raise these claims at the time of the suppression hearing could be cause to excuse such default, petitioner does not make such a claim. Furthermore, petitioner failed to present such a claim of ineffectiveness to the state courts, thereby causing it to be defaulted, as well.